129 So.2d 249 (1961)
Mrs. Marguerite Sassoon OHANNA
v.
Aholiab OHANNA, also known as Al Ohanna.
No. 19.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1961.
Rehearing Denied May 15, 1961.
Certiorari Denied June 22, 1961.
*251 Weinstein & Bronfin and Martin L. C. Feldman, New Orleans, for plaintiff and appellee.
Maurice R. Woulfe, New Orleans, for defendant and appellant.
McBRIDE, Judge.
After finality of the judgment of divorce in her favor the plaintiff petitioned for and obtained a judgment ordering a partition of the community, the court referring the parties to a designated notary public, he being authorized and directed to effect a partition in kind. Said official, after preparing and presenting his proposed act of partition to the court, which the parties had refused to sign, cited them to show cause why it should not be homologated and the partition consummated in accordance therewith. Both parties filed opposition and after a hearing, several judgments were rendered amending the proposed partition, the act ultimately being approved and homologated as amended and so far as not opposed. The husband appealed from the judgment of approval and homologation. The wife has answered the appeal.
(1) Bills of Dr. W. Randolph Unsworth aggregating $335. Defendant unsuccessfully sought an amendment to the proposed partition allowing him a credit for having paid these bills. However, at the hearing on the opposition no attempt was made either to prove the verity of the bills or their payment.
(2) The defendant is claiming he paid a total of $368 for Blue Cross hospitalization for his family over a four-year period and is a creditor of the community therefor. He could not testify what, if any, payments he made nor could he produce receipts. Moreover, he abandoned the claim in the court below.
(3) Defendant seeks credit for $335.44 paid Touro Infirmary for hospitalization for himself. No evidence at all was introduced respecting this item and we know nothing of it.
(4) In 1942 defendant owned and operated a mercantile establishment. On August 8 of that year the parties were married. The husband now claims he brought $9,713.86 into the marriage for which he seeks recognition as a creditor of the community. The only evidence regarding this claim emanates from a certified public accountant who testified that as of June 30, 1942, his firm made a statement of defendant's net worth which "was reasonably stated or fairly stated as being $9,700." The statement of net forth referred to although offered in evidence is not a part of the record. According to the accountant's testimony the property consisted of $700 cash and the stock in trade in defendant's business. It was not shown what happened to the husband's alleged assets during the forty-day interim between the accountant's statement and the date of the marriage, and nothing goes to show defendant still possessed the property or any portion of it at the commencement of the community, and there is no illustration as to how the community may have been benefited, if at all, from whatever so-called separate property appellant may have had. But assuming that it is true he had some property when he married, we know of no law to the effect that at the dissolution of the community each separate estate is owed the value of whatever property the spouse had at the time of the marriage. Succession of Geagan, 212 La. 574, 33 So.2d 118. There is no fixed rule or standard of proof required to establish that the contribution of the separate property of the husband had been used to benefit the community, but to establish *252 such a claim it must appear with reasonable certainty that the community still had the benefit of the contribution at the time of its dissolution, and that the separate funds were not wasted by the husband or disposed of for his separate benefit. Succession of Bell, 194 La. 274, 193 So. 645, and cases therein cited.
(5) Berger Bros. holds four notes aggregating $10,000, dated respectively September 8, 1953, August 5 and November 4, 1954, and April 30, 1955, and the defendant is contending that the community is obligated for the payment thereof and maintains that Berger Bros. should be recognized as a community creditor. A representative of Berger Bros. testified the notes represented loans made defendant, and he produced the four cancelled checks said to have been given defendant in consideration for the notes. Three of the checks are payable to A. Ohanna and the payee in the fourth is A. Ohanna, Inc. The endorsements on the checks show that each and every one of them was deposited in the banking account of A. Ohanna, Inc., a corporation.
There can be no question the loans were negotiated by the husband for the account of his corporation, A. Ohanna, Inc., and that the notes representing the loans were issued as obligations of the corporation. The signature "A. Ohanna" appears under the corporate name on each note, but there is no necessity for deciding the question of defendant's personal liability vel non on the notes.
On March 10, 1952, the wife brought a suit for separation from bed and board against defendant on the ground of cruel treatment. On March 29, 1954, she sued him for the divorce on the ground of two years separation. The judgment of divorce, rendered on November 30, 1954, was affirmed by the Supreme Court, March 26, 1956 (229 La. 942, 87 So.2d 299). It will be noted that the first of the four notes held by Berger Bros. was executed during the pendency of the suit for separation from bed and board and the other three were executed after the action for divorce had been instituted.
It is now settled in Louisiana that the community of acquets and gains is dissolved as of the date of the judgment of separation or divorce. Ruffino v. Hunt, 234 La. 91, 99 So.2d 34; Abraham v. Abraham, 233 La. 808, 98 So.2d 197; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169; Tanner v. Tanner, 229 La. 399, 86 So.2d 80. LSA-C.C. art. 2432 which provides that the judgment which pronounces the separation of property is retroactive as far back as the day on which the petition for the same was filed is not applicable to a suit for separation from bed and board or divorce brought by either the husband or wife, the article applying only in actions for separation of property instituted by the wife.
However, LSA-C.C. art. 150 provides:
"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife."
Defendant argues that the provisions of the above-quoted article have no application to any debts he might have incurred on account of the community because such debts were created in good faith and not with the fraudulent view of injuring his wife's rights. A reading of the article compels a conclusion that it does not establish as a standard that the debts must be fraudulent. LSA-C.C. art. 150 plainly distinguishes between contracting a debt on account of the community and the disposing of or alienating the community immovables and provides that a fraudulent alienation shall be null. No requirement is made that *253 a contract of indebtedness to be unlawful must be made with the view of defrauding the wife. Our opinion is that under the clear terms of said codal article debts such as the ones due by the husband to Berger Bros., if contracted for the account of the community after the suit is filed, are unlawful. The article has applicability both as to suits for divorce as well as to suits for separation. That much is made clear not only because of the position of the article in Chapter 3 of Title V of the Code dealing with the Provisional Proceedings To Which a Suit for Separation or Divorce May Give Occasion but also by virtue of the provisions of the next succeeding article (151), viz.:
"The action for divorce shall be accompanied with the same provisional proceedings to which a suit for separation from bed and board may give rise."
Counsel for defendant takes the position that the suit for separation was abandoned as of March 29, 1954, when Mrs. Ohanna filed suit for the divorce. The first of the loan transactions with Berger Bros. occurred prior to the divorce suit, but during the pendency of the suit for separation from bed and board, and counsel would seem to imply in his argument that whereas the suit for separation was abandoned the loan transaction made during its pendency could not be affected by the terms of LSA-C.C. art. 150.
If it is assumed that defendant is personally liable on the notes of Berger Bros., which point we do not decide, it is clear under the provisions of LSA-C.C. art. 150 such indebtedness is not due by the community because the husband could not lawfully contract any debt on account of the community during the pendency of either the suit for separation or the divorce suit. The first suit, i. e., for separation from bed and board was, contrary to counsel's argument, never abandoned. Merely because the wife saw fit to file the second suit seeking an absolute divorce on another ground during the pendency of the first would not of itself constitute an abandonment of the prior suit. It may have been that she would have been unsuccessful in her suit for divorce, in which event there could have been no legal impediment that we know of preventing her from reverting back to and proceeding with her original suit. The first of the loan transactions made during the pendency of the separation suit was just as unlawful as a community debt as the three subsequent transactions negotiated after the filing of the divorce suit.
6. This item involves a promissory note for $1,000 allegedly held by one Abner Sholsh of Jackson, Mississippi, defendant contending it is a debt which should be included in the tableau of charges due by the community. Sholsh never saw fit to appear and testify at the hearing with reference to the note defendant says Sholsh holds. The note is allegedly dated January 15, 1944, and according to defendant, he is still indebted for the amount thereof and has made only three payments thereon of $25 each on dates he could not remember. We are not satisfied it has been proven defendant owes Sholsh any money. Moreover, it appears to us that the note, which is payable on demand, is prescribed on its face. Darby v. Darby, 120 La. 847, 45 So. 747, 14 L.R.A., N.S., 1208; Zimmer v. Caumont, La.App., 187 So. 681.
7. Defendant's note dated February 16, 1954, for $2,000, payable two years after date, held by Ben Blumberg, allegedly representing money advanced over a period of time to defendant is not a debt of the community. This note was executed subsequent to the institution of the suit for separation from bed and board and the debt, insofar as the community is concerned, is unlawful. LSA-C.C. art. 150.
8. There was held by the Whitney National Bank of New Orleans for the account of the community the sum of $615.36, *254 representing the surplus accruing from the sale of securities pledged for a community debt in the name of defendant. We do not know what complaint defendant could possibly have against the manner in which this item was treated by the lower court. The funds were stipulated to be an asset of the community and in the judgment of February 13, 1958, the judge ordered that the amount to be partitioned be increased by adding thereto the above amount.
9. Defendant claims he paid his wife as alimony pendente lite between 1952 and March 1956 the sum of $14,267.28, and contends he should be recognized as a creditor of the community to the extent of such payments. Defendant raises the issue of the payments of alimony pendente lite for the first time in this court, no mention thereof having been made in his opposition filed below, nor in his motion of appeal which specified certain errors in the judgment. Before the advent of the Code of Civil Procedure we would not be authorized to pass on this claim because the matter was not presented to the lower court, and, of course, was neither considered nor adjudicated by the trial judge. The jurisprudence is to the effect that an appellate court does not decide questions which were not decided by or contested in the court from whose judgment the appeal is taken. However, the now prevailing LSA-Code of Civil Procedure in Art. 2164 provides as follows: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. * * *" We conceive this to mean that the appellate court has complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the trial court.
Now, turning to a consideration of defendant's claim that he is a creditor of the community for alimony pendente lite paid to the wife, it is at once obvious he is not entitled to the relief he seeks if for no other reason than that nowhere in the record does it appear how much, if anything, he paid his wife as alimony during the pendency of the suits, nor was any mention made of the source from which the payments were made. Furthermore, the record, which incidentally was prepared by the Clerk below as directed by the parties, the contents thereof comprising only those parts of the record they desired included, does not even contain the judgment or order which condemned plaintiff to pay alimony pendente lite. The only mention of alimony appearing in defendant's testimony has reference to the payment of permanent alimony accruing after the judgment of divorce and clearly defendant would have no claim against the community for any amount so paid.
10. The husband complains that the trial court erred in recognizing the wife to be his creditor for the sum of $1,399.50, representing half of the aggregate of cash dividends collected by him on capital stock owned by the community in building and loan associations. The ruling was proper. The evidence is clear and convincing that the dividends in question were collected by the husband subsequent to the affirmance of the judgment of divorce by the Supreme Court and the wife should not be deprived of her share thereof.
11. Complaint is also made that the trial judge erred in allowing the wife's claim to the $635 on deposit in a savings account No. 48,889 in the Whitney National Bank of New Orleans as her separate property, contending that said funds belong to the community. There is no error in the allowance. The evidence clearly establishes that the account stands in the name of the minor, Marcelle Ohanna, a child of the marriage. Mrs. Ohanna's uncontradicted testimony is that this money was a gift from her mother and she placed it in the above account which she opened in the name of her child because she and her husband were "fighting" and he was *255 threatening her life and her motive was to protect the child.
12. In her answer to the appeal the wife complain that the trial judge erred when he refused to recognize her as a creditor of the community for $450, which represents unpaid alimony pendente lite which accrued during the time she spent in New York. The judge mentioned that he was disallowing the claim because Mrs. Ohanna left the state with her children without having obtained authorization of the court thus depriving her husband, during her absence of six weeks, of his right to visit the children. This delinquent alimony should be charged against the husband as head and master of the community and is payable out of community funds. Messersmith v. Messersmith, supra. The reason assigned for not recognizing the wife's claim is not valid. Because she left the state under emergent circumstances is no reason why she should be deprived of her alimony during the brief period of her absence. It would seem to us that the death and funeral of her mother in New York required her immediate departure without allowing time for obtaining a formal order of court. Her absence from Louisiana was temporary and not in any way designed to deprive the husband of his right of seeing the children and we think he should have been forbearing under the circumstances.
Therefore, it is ordered, adjudged and decreed that the judgment appealed from rendered March 4, 1958, and signed March 10, 1958, which approved and homologated the proposed partition as amended and so far as not opposed, be amended so as to decree that the wife is a creditor of the community to the extent of $450 representing past due and unpaid alimony pendente lite, and as thus amended and in all other respects the judgment appealed from is affirmed. Costs of this appeal shall be borne by the appellant.
Amended and affirmed.