382 P.2d 659

Eleanor W. SPECTOR, Appellant and Cross-Appellee,

v.

Albert B. SPECTOR, Appellee and Cross-Appellant.

No. 7183.

Supreme Court of Arizona.

En Banc.

June 5, 1963.

Rehearing Denied July 2, 1963.

Moore & Romley, Phoenix, for appellant and cross-appellee.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, for appellee and cross-appellant.

JOHN F. MOLLOY, Superior Court Judge.

This case originated as an action for divorce by appellee husband, with the cross complaint by appellant wife. The trial

court terminated the marriage without specifying in whose favor the issue as to the grounds for divorce was decided. Custody of the two children was awarded to the husband with reasonable rights of visitation granted to the wife. The trial judge also made a distribution of community property between the parties, and made allowance for alimony, attorney's fees, and costs in favor of the wife. From the judgment the wife appeals and husband cross-appeals.

This Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to upholding the decree of the trial judge. Todaro v. Gardner, 72 Ariz. 87, 231 P.2d 435. Viewed in that light, the evidence is as follows: The parties have been married more than eighteen years. They had two children, fourteen and sixteen years old. The children testified they preferred to be with their father and there was testimony from which the trial judge could have found that it would be in their best interest to be with him. At the beginning of the marriage, the husband's earnings were meager, and at the time of the trial all of the property of the couple was community property. The husband is a practicing lawyer and the wife has little experience other than as a housewife. Starting from a modest beginning the couple developed a relatively luxurious standard of living. The house in which they lived was worth between $65,000 and $96,000 according to the testimony of the husband and an inventory filed by him. There was no independent testimony as to its worth.

The bulk of the community property was not liquid. As its cost basis is considerably less than its worth at the time of trial, a liquidation of the property would make necessary the payment of a considerable amount of income taxes. Also, all of the property, including stock in closely held corporations, was heavily encumbered and a forced sale would realize less than its actual value. After the complaint was filed, the husband continued to manage the community property, invested substantial sums in various enterprises, and incurred substantial community debts in the process. The community owned 1,200 shares of stock in the Foothills Development Company. This stock was one-half of the outstanding stock of the company. The principal asset of the company was 240 acres of land in the Squaw Peak area north of Phoenix. The land had been purchased by the Spectors, placed in the corporation, and one-half interest in the stock sold to third parties for $240,000 with the condition that the Spectors loan the corporation $100,000 at 3% interest to develop the land. The agreement also provided that the third persons were to be repaid for their full investment before the Spectors received any-

thing from the corporation and that the loan was to be repaid only with the approval of the third persons. The husband variously testified that the stock owned by the couple was worth somewhere between $24,850 (its unrecovered cost basis) and $120,000. The land itself was worth $3,000 an acre at the time of trial, and there was testimony that its value would increase by $500 per acre when a public street was opened. (According to statements contained in appellant's brief, the street opened subsequent to the decree.)

A payment of $16,077.07 had been made by the husband to a woman with whom he had had financial dealings over a period of years. These dealings were mostly partnership transactions, were financially successful, and the profit from them formed a considerable part of the community property accumulated by the couple. Both the husband, the husband's law partner, and the woman testified that the payment was in furtherance of a joint venture in which profits and losses would be shared three ways by the husband, the woman and the husband's law partner.

Between January of 1958 and April of 1960, the husband gave a daughter by a previous marriage $11,000. The wife agrees that it was the duty of the husband to support the daughter but contends that the payment could not be made without her consent. The daughter had been supported by the husband at a cost of approximately $3,000 per year prior to his leaving his wife in January of 1958 and filing a complaint for divorce.

Both the husband and the wife submitted accountings as to the financial standing between the husband and his law partner. The husband's accounting shows his equity in the law partnership to be $2,730.94 less a debt of $391.77, or $2,339.17. The accounting by the wife's accountant shows this interest as $54,108.17.

The trial judge allowed the wife $450 per month alimony for the first year after the divorce and $350 per month thereafter until her death or remarriage. He also decreed that title to the community property, valued at $483,100 remain in the husband, but that the wife be paid $142,000 payable in five annual installments without interest. The husband took title with the obligation to pay community property debts of $165,275 in addition to the encumbrances on the property and to satisfy any income tax liabilities of the parties. The husband also was obligated to pay the wife's attorneys' fees of $15,000, and costs of $5,197.33.

The wife has made numerous assignments of error, one of which attacks the granting of custody of the minor children. These children are both of an age "requiring education and preparation for labor or business" and under applicable statute (A.R.S. § 14–846) the father is to be given preference over the mother, other

facts being equal. The trial court's discretion in this regrad will not be disturbed except for a clear abuse. Grimditch v. Grimditch, 71 Ariz. 198, 225 P.2d 489 (modified on rehearing, 71 Ariz. 237, 226 P.2d 142). Considering the intent of the statute, the ages of these children, their stated preference to be with the father, and the trial judge's finding that it would be in their best interest to be with their father, we find no abuse.

■■ The amount of alimony given the wife is also within the sound discretion of the trial court, Cummings v. Lockwood, 84 Ariz. 335, 327 P.2d 1012, and the use of the words "until her death or remarriage" cannot be considered a restriction upon the power of the trial court to modify the decree as is contended. The words merely establish the two conditions subsequent, the occurrence of which would terminate the payment of alimony and do not limit the jurisdiction of the court in any respect.

■■ The trial judge's finding that the payment of $16,077.07 to the woman with whom the husband had had financial dealings was pursuant to a joint venture in furtherance of the community property was supported by credible evidence, and it will not be set aside. cf. Patzman v. Marshall, 90 Ariz. 1, 363 P.2d 599. It was within his discretion to accept the testimony of the husband, as owner of the house, that its value at the time of trial was $65,000.

Board of Regents v. Cannon, 86 Ariz. 176, 342 P.2d 207.

■ The trial court did not err in failing to make a specific finding as to the value of each major item of community property, as his findings are sufficient for this court to determine the total value of the community property, the total amount of community liabilities and the amount given the husband and the wife. Gilliland v. Rodriquiz, 77 Ariz. 163, 268 P.2d 334. The trial court was also acting within its discretion in leaving title to the property in the husband and awarding the wife a cash amount, considering the delicate business problems involved in maintaining the value of the property and the prospective losses which would result from its liquidation. A.R.S. § 25-318, subd. (A).

The major contentions made by the wife are that the total value of the community property was in excess of that found by the trial judge. The wife contends that all debts incurred by the husband on account of management of the community business after the filing of the divorce should be charged to the husband personally. She relies on A.R.S. § 25-314 which reads:

"After an action for divorce is filed, the husband shall not contract any debts on account of the community property nor dispose of such property. Any alienation made by the husband after the action is filed shall be null and void

if made with a fraudulent intent to injure the rights of the wife."

There was testimony that the community debts contracted by the husband after the filing of the divorce complaint were for the benefit of the community property. Pursuant to A.R.S. § 25–211, the husband is in charge of the business affairs of the community. See, e. g., Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463. His position is analogous to that of a trustee. Vai v. Bank of America National Trust & Savings Ass'n, 56 Cal.2d 329, 15 Cal.Rptr. 71, 364 P.2d 247; Linton v. Linton, 78 Idaho 355, 303 P.2d 905; Keller v. Keller (Tex.Civ.App.), 122 S.W.2d 270 (Modified in 135 Tex. 260, 141 S.W.2d 308, 309). A construction of the statute which would result in a flat prohibition against the contracting of debts by the statutory manager of the business affairs of the community property during the pendency of a divorce could result in destruction of the property itself. The burden is, of course, upon the husband to justify his management of the business, and any debts incurred. If the husband has justified his management to the trial court's satisfaction, as it appears was the case here, he has shouldered his burden.

The wife would have the court calculate the value of the Squaw Peak property on an acreage basis, charge the husband with the $100,000 note due from the third parties, and include as community property one-half of the value of the acreage. Where the interest of the couple in the land is evidenced by stock which is subordinate to that of third persons, both as to the repayment of the note and the time when the property will start to realize on its investment, the trial judge was justified in using a yardstick other than an acreage price of the land to arrive at its value to the community. And the fact that the price per acre of the land may have increased since the time of the trial will not be considered by this Court in judging the correctness of the trial court's decision where it has disposed of community property in a manner seemingly equitable at that time.

In two respects, we agree in part with the contentions of the wife that the uncontradicted evidence established the community property to be greater than that found by the trial court. While there is uncontradicted evidence here that the husband gave to his daughter more than was reasonably necessary for this purpose, money spent for the support and education of the daughter was a legal obligation of the husband. See: Redewill v. Superior Court, 43 Ariz. 68, 29 P.2d 475; Esteb v. Esteb, 138 Wash. 174, 244 P. 264, 246 P. 27, 47 A.L.R. 110. The trial court could have concluded that $3,000 per year was reason-

ably necessary for the support and education of this college-age girl. There is no justification however for going beyond $3,000 per year and we therefore hold that the husband must account to the community for the undisputed excess of $4,000.

In addition, we agree with the wife that the results of the husband's accounting as to his equity in the partnership was not realistic. While we do not hold that the accounting system used by the wife's accountant is the only one which could be used to calculate the husband's equity in the partnership, it is reasonable and does not contain the egregious inaccuracies exhibited by the husband's accounting.

The wife presented an accounting by a Certified Public Acountant differentiating between personal and partnership transactions. The correct financial position of the husband could not properly be shown by using the accounting method submitted by the husband. His accounting method is erroneous as it fails to show the correct relative position of the partners to each other and to the partnership. The following example will illustrate the erroneous nature of the husband's accounting as to his financial position.

A and B are partners in AB partnership.
1.  A advances $1000 to AB partnership.
2.  A advances $1000 to B personally.
3.  B advances $2500 to AB partnership.

Using the husband's accounting procedure the following result is reached:

| | Credit A | Credit B |
|---|---|---|
| 1. | $1000 | |
| 2. | 1000 | |
| 3. | | $2500 |
| | $2000 | $2500 |

"Balance" ($500) (treated in the husband's accounting as a debt owed to A by B)

Using the same example, the following illustrates the wife's accountant's procedure:

| Partnership | | Account A with B | Account B with A |
|---|---|---|---|
| A | B | | |
| 1. $1000 | | | |
| 2. | | ($1000) | $1000 |
| 3. | $2500 | | |
| $1000 | $2500 | ($1000) | $1000 |

Balance for A:

| Partnership Interest | $1000 |
|---|---|
| Personal from B | 1000 |
| Total Equity | $2000 |

Balance for B:

| Partnership Interest | $2500 |
|---|---|
| Personal, Debt to A | (1000) |
| Total Equity | $1500 |

Using the simple example it can readily be seen that under the husband's method of accounting, the husband's equity would not be properly portrayed. In this example, using the husband's method of accounting A ends up owing his partner $500 and his $2000 equity has vanished, a neat trick of bookkeeping legerdemain. By "accounting"

in this manner for many items over a three year period, there is a considerable difference between a true accounting and the accounting submitted by the husband.

We therefore hold that the husband's net equity in the partnership was $54,108.17 and that the community property must be increased by that amount less the $2,339.17 figure admitted as his equity by the husband, or $51,769. Adding the amount to the $4,000 given to the daughter, and dividing by one-half we hold that the wife is entitled to have $27,884.50 added to her share of the community property. Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453.

In view of the trial court's findings as to the nature of this estate and the relative business abilities of the parties, this court holds that there shall be an additional payment of $27,884.50 at 6% interest from the date of the original decree made by the husband to the wife on or before six years from date of judgment in the lower court.

The wife also assigns as error the ruling of the trial court which prohibited the wife's counsel from asking the husband on cross-examination, whether he would be willing to sell one of the community properties at the figure at which he had estimated its value in an inventory. On cross-examination a party should be permitted to ask any question which bears upon the credibility of the witness and sheds light upon the issues of the case. The question was clearly proper on cross-examination and should have been allowed. However, the husband was cross-examined at length as to various issues of valuation and there were many other opportunities for the wife to test the valuation set by the husband on this particular piece of property. We hold the error is not cause for reversal.

The wife assigns as error the failure of the trial court to appoint a receiver to take charge of all of the community property of the parties to manage and preserve it until a fair disposition of the property can be made. The theory of this assignment is that the valuation of the particular properties involved is so difficult that a "Just and Right" division was not possible at the time of the trial. In view of our decision in this case this assignment is held to be without merit.

The husband assigns as error in his cross-appeal the fact that the court allowed the wife's counsel $10,000.00 to be paid by the husband in addition to the $5,-000.00 paid as a pendente lite fee, making a total attorney's fee of $15,000.00. The husband further complains that he was ordered to pay the accountant employed by the wife the other costs of litigation of the wife in the total sum of $5,187.33. In this latter connection, the husband relies upon a stipulation made between counsel that, in the

event the wife's accountant was unable to discover any community property in addition to that which was acknowledged by the husband in his written inventories and appraisals filed with the court, the wife would pay her own accountant's fees. Since we have decided the wife's accountant did discover additional community property the husband is bound by the stipulation.

■ Attorneys' fees for the wife in a divorce action are within the sound discretion of the trial court. Kingsberry v. Kingsberry, 93 Ariz. 217, 379 P.2d 893.

■ The husband also contends the court had no power to impress a lien on the community property awarded to the husband in the divorce decree to insure payment of the amount awarded the wife. Authority for such procedure is found in A.R.S. § 25–318, subd. (A). Cf. Meyer v. Meyer, 184 Cal. 687, 195 P. 387; Webster v. Webster, 216 Cal. 485, 14 P.2d 522. We think the Legislature did not intend this lien-creating power given by A.R.S. § 25–318, subd. (B) to apply only to "separate property" acquired by gift, devise or descent.

■ The husband further contends that the imposition of this particular lien upon the stock in the Foothills Development Company is in violation of a contract signed by both the husband and the wife with the third parties who bought into the corporation. In this contract the Spectors agreed, in the event of "death, divorce or incompetency of any of the parties" that they would "take no action to interfere with the ownership of stock in Foothills Development Company" to "insure that the management of said corporation remains in A. B. Spector, H. W. Whitman, George W. Whitman and R. E. Johnson, or their survivors."

The validity of this particular agreement as it affects third parties is not before the court. The imposition of this lien is not, per se, an interference with the management of this corporation. Certainly the wife has not violated this agreement in that she did not ask for this lien, but for something quite different, a division of the community property in kind. The court, in its discretion, determined that this was not, under the circumstances of this particular case, in the best interest of the parties, and, over the wife's objection, created this lien, as being the best way to give to the wife a fair share of the community property. If the husband pays to the wife the amount ordered by the court, there will be no interference whatsoever with his management of this particular stock. If he fails to pay the amounts which the Court finds that he fairly owed to his wife, then he is in no position to complain as to whatever interference the enforcement of this lien might cause.

The husband further complains that the court should have granted to him a decree of divorce, rather than entering a decree terminating the marriage without specifying in whose favor the issue as to grounds for divorce was decided, which type of decree has become known in this State as a "Brown decree." The trial court found that the husband contributed to the destruction of the marriage by failing to evidence "sympathetic understanding and helpfulness" to the wife when she evidenced severe emotional instability. There being substantial evidence to support the decision of the lower court, the granting of the Brown decree is affirmed.

Having now disposed of all other assignments of error, we return to the major one, raised by the wife, that there was not a fair and equitable division of the community assets. The question of whether there was is again a matter within the discretion of the trial judge, in the absence of abuse. Matlow v. Matlow, 89 Ariz. 293, 361 P.2d 648.

Because of the peculiar nature of the business and property interest of this couple, we hold that the division of the assets found to exist by the trial court was not an abuse of discretion. It is our view that the lien imposed to secure the wife's equity is not reasonably adequate to secure the cash payments assigned to her and to this extent her contention that the division of these assets is not fair or just is well founded.

We therefore direct the trial court to impose a lien on all of the property of the husband as firm security for payments ordered by the trial court. As these payments are made the husband may apply to the trial court to release property as the trial court, in the exercise of its judgment deems proper. The appellant wife is to recover her costs in this court.

The decision of the trial court is affirmed in part and modified in part.

UDALL, V. C. J., STRUCKMEYER and LOCKWOOD, JJ., and W. C. TRUMAN, Judge of Superior Court, concurring.

NOTE: The Honorable CHARLES C. BERNSTEIN and RENZ L. JENNINGS being disqualified, the Honorable JOHN F. MOLLOY, Judge of the Superior Court of Pima County and the Honorable W. C. TRUMAN, Judge of the Superior Court of Pinal County, were called to sit in their stead.