153 So.2d 145 (1963)
Adraste LANDRENEAU, Plaintiff and Appellee,
v.
John CEASAR, Lucius Ceasar, Third Party Plaintiff-Appellant.
No. 820.
Court of Appeal of Louisiana, Third Circuit.
April 22, 1963.
Rehearing Denied May 28, 1963.
Certiorari Refused June 28, 1963.
*146 John P. Navarre, Oakdale, for defendant-appellant.
Tate & Tate, by Donald Tate, Mamou, for plaintiff-appellee.
Bernard N. Marcantel, Jennings, for third party defendant-appellee.
Before TATE, FRUGE and HOOD, Judges.
HOOD, Judge.
This suit was instituted originally by Adraste Landreneau against John Ceasar (sometimes spelled Ceaser), as an action on a promissory note. No pleadings were filed by John Ceasar, and in due course a default money judgment was rendered in favor of plaintiff and against said defendant. The judgment creditor obtained the issuance of a writ of fieri facias, and under that writ he proposed to have the Sheriff seize and sell a certain lot of land in Allen Parish, with improvements, to satisfy the judgment.
Lucius Ceasar then filed a petition in the same proceeding alleging that he is the owner of the property sought to be seized and sold, having previously acquired said property at a partition sale. He seeks a judgment (1) enjoining Landreneau and the Sheriff from selling that property under the writ of fieri facias, and (2) decreeing Percy A. Cole, Clerk of Court, to be the warrantor of the property sought to be seized and sold, and condemning the said Clerk to pay unto Lucius Ceasar the amount which the latter may be forced to pay to Landreneau in satisfaction of the judgment. The only defendants named in the injunction proceeding instituted by Lucius Ceasar are Landreneau, the Sheriff and the Clerk of Court.
An answer was filed by the Clerk of Court but no pleadings were filed by Landreneau or by the Sheriff. After trial of the issues raised in this injunction proceeding, judgment was rendered by the trial court recognizing that the judgment held by Landreneau constituted a valid and legal mortgage on the real property which Landreneau sought to have seized and sold, and absolving Percy A. Cole, the Clerk of Court, from liability. Lucius Ceasar, plaintiff in this injunction proceeding, has appealed from that judgment.
The facts, as shown by the record and as stated by the trial judge in his written reasons for judgment, are that on January 28, 1955, Mabel Victorian Ceasar instituted a suit for separation from bed and board against her husband, John Ceasar. In connection with that suit a temporary restraining order was issued and later, on February 18, 1955, a preliminary injunction was issued enjoining John Ceasar from alienating, encumbering, pledging or mortgaging any of the property owned by the *147 community of acquets and gains then existing between him and his said wife. A judgment of separation from bed and board was rendered by the district court in that proceeding on April 13, 1955, but no formal decree to that effect was ever read and signed in the trial court.
On June 16, 1955, which was after the separation suit had been instituted and while the above-mentioned preliminary injunction was in effect, John Ceasar executed a promissory note for the principal sum of $700.00, made payable to Landreneau, and as security for the payment of that note he also executed an act of chattel mortgage affecting some items of movable property which belonged to the community. The note was not paid when due, so this suit was instituted, and on November 28, 1955, Landreneau obtained judgment against John Ceasar for the principal sum of $596.65, being the balance then due on the note.
On August 21, 1956, John Ceasar filed suit for an absolute divorce against Mabel Victorian Ceasar, alleging that a legal separation had been granted to his wife more than one year and 60 days prior thereto. No answer was filed in that suit, and judgment was rendered by default in favor of John Ceasar on September 24, 1956, decreeing an absolute divorce between the parties. A decree to that effect was read and signed on the same day.
After this final divorce had been formally decreed, and in response to a joint petition filed by John Ceasar and his former wife, the district court ordered that the community of acquets and gains which theretofore had existed between John Ceasar and his said wife be partitioned by judicial sale, and a notary public was appointed to distribute the proceeds of the sale.
A commission was issued to the Sheriff of Allen Parish on December 14, 1956, ordering him to sell at public auction the community property existing between the parties. After due advertisement the community property, including the tract of land here at issue, was sold on February 21, 1957, for a total price of $2,030.00, of which $1,931.15 was given to the notary for distribution.
At the sale of the property, a mortgage certificate was obtained from a deputy clerk of court and this mortgage certificate was read at the sale. The chattel mortgage which had been executed by John Ceasar to Landreneau, dated June 16, 1955, was shown on this certificate. The judgment in favor of Landreneau and against John Ceasar, dated November 28, 1955, however, was not shown on the mortgage certificate.
The purchaser, Lucius Ceasar, had no knowledge of the judgment which had been rendered against John Ceasar in favor of Landreneau, and he purchased the real property at the partition sale in good faith, believing that he was acquiring the property free from encumbrances.
The notary public to whom the funds had been delivered for distribution, ascertained the community debts which were due, and all of these community debts have been paid. The sum of $50.00 was then paid to John Ceasar, a larger sum was paid to Mabel Victorian Ceasar, and there remains in the hands of the notary the sum of $107.11.
On April 9, 1959, Landreneau, through his attorney, obtained the issuance of a writ of fieri facias, and under that writ he proposed to have the real property which had been purchased by Lucius Ceasar sold to satisfy the judgment. Lucius Ceasar thereupon instituted this action primarily to enjoin the sale of such property under that writ.
Under these facts, the trial judge concluded that the judgment rendered on September 24, 1956, decreeing an absolute divorce between John Ceasar and Mabel Victorian Ceasar, was invalid because prior thereto there had been no formal judgment of separation from bed and board between said parties. Further, the trial judge concluded that since there had been no valid separation or divorce decree between the parties, the community of acquets and gains which existed between John Ceasar and his wife had never been dissolved, and for *148 that reason the partition sale to Lucius Ceasar of the property which Landreneau seeks to have seized and sold in this proceeding also is invalid. Judgment accordingly was rendered, recognizing the judgment in favor of Landreneau, rendered on November 28, 1955, as constituting a valid judicial mortgage on the real property which Landreneau sought to have seized and sold, and absolving Percy A. Cole, the Clerk of Court, from any liability for failing to show the judgment in the certificate of mortgages which he furnished to the Sheriff in connection with the partition sale.
We think the trial court erred in concluding that the judgment of divorce between John Ceasar and Mabel Victorian Ceasar was invalid. Neither John Ceasar nor Mabel Victorian Ceasar were parties to this action, the only parties before the district court and before us on this appeal being Lucius Ceasar, Landreneau, the Sheriff and the Clerk of Court. No attack has been made on the judgment of final divorce by any of the parties to this proceeding and no such attack has been made in any of the pleadings filed herein. On the contrary, Lucius Ceasar and the Clerk of Court, being the only parties to this proceeding who filed any pleadings at all, both strongly contend that the judgment rendered on April 13, 1955, granting a separation between the parties, and the judgment of final divorce rendered on September 24, 1956, were valid. The other parties to this action filed no answer or pleading of any kind, although counsel for Landreneau did file a brief in which he commented that since the judgment of separation had not been read and signed it was of "doubtful effect." No argument was made in behalf of Landreneau, however, that the judgment decreeing a final divorce between John Ceasar and Mabel Victorian Ceasar was invalid.
Also, the divorce decree rendered on September 24, 1956, was a final judgment, even though it may now appear that the evidence was not sufficient to support such a decree. The record does not show that an appeal was ever taken from that judgment, and no fraud or facts are alleged in any of the pleadings which could serve as a basis for modifying or annulling that judgment under the provisions of the Louisiana Code of Civil Procedure. LSA-C.C. P. Articles 1951-2006, inclusive.
It is for these reasons that we think the trial court erred in finding that the judgment rendered on September 24, 1956, decreeing a final divorce between John Ceasar and Mabel Victorian Ceasar is invalid. Since a final judgment decreeing a divorce between those parties was rendered on that date, and since that decree has never been modified or annulled, we conclude that the community of acquets and gains which theretofore existed between the parties was terminated on that date, if it in fact had not been terminated prior thereto. See Shapiro v. Shapiro, 242 La. 903, 139 So.2d 762; Viser v. Viser, La.App. 2 Cir., 131 So.2d 68; McLin v. McLin, La.App. 1 Cir., 130 So.2d 748.
It follows that since the community was dissolved by the divorce decree, if not before that decree was rendered, the order of court issued thereafter directing that the community be partitioned was proper and valid. No issue is raised in this proceeding as to the legality of the partition sale, and we conclude that Lucius Ceasar acquired a valid title to the property here in dispute by virtue of that sale.
The next question presented is whether the indebtedness of John Ceasar to Landreneau, which was incurred on June 16, 1955, is a community debt or is the separate debt of John Ceasar. Lucius Ceasar and the Clerk of Court contend that it was the separate debt of John Ceasar, that the community debts must be paid from the proceeds of the partition sale in preference to separate debts, that the proceeds of that sale have been properly distributed and that Landreneau has not been injured by the Clerk's failure to list the judgment on the mortgage certificate. Counsel for *149 Landreneau, in the briefs which he has submitted, argues primarily that the indebtedness of John Ceasar to Landreneau was a community debt which should have been paid by preference out of the proceeds of the sale. In the alternative, it is argued that Landreneau is entitled to be paid by preference even though it is not a community debt.
As has already been pointed out, the indebtedness of John Ceasar to Landreneau was incurred during the pendency of a suit for separation from bed and board which had been instituted against the said John Ceasar by his wife.
Article 150 of the LSA-Civil Code provides:
"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife."
In our opinion, this article of the Civil Code makes a distinction between the contracting of a debt and the alienation of property. The question which is presented here is whether John Ceasar had the right to contract a debt on account of the community while a suit for separation from bed and board was pending against him. Article 150 of the LSA-Civil Code clearly states that it "shall not be lawful" for him to do so. The last portion of the article, providing that any "alienation" made by the husband pending such a suit shall be null, if made with the fraudulent view of injuring the rights of the wife, relates only to alienations and not to the contracting of debts. In this case, John Ceasar could contract a debt on his separate account pending the separation suit, but he simply could not lawfully contract a debt on account of the community, whether in good or bad faith. It is not necessary for us to consider whether the act of crop pledge and chattel mortgage executed by John Ceasar is an alienation which might be annulled, because no demand is made here for the annulment of that act.
Counsel for Landreneau, in his scholarly brief, has referred us to Article 271 of the Code Napoleon (Vol. 3, Part 1, Louisiana Legal Archives, Compiled Edition of the Civil Codes of Louisiana), which was the source of Article 150 of our LSA-Civil Code. This article of the French Code seems to provide, as contended by counsel, that an "obligation" made by the husband pending the suit, as well as an "alienation," may not be annulled unless there is fraud. It is argued that Article 150 of the LSA-Civil Code was intended to contain the same provisions as those contained in the source article. The provisions of Article 150 of our LSA-Civil Code, however, differ materially from those contained in the source article, and it seems to us that the redactors must have intended that our law should not be identical to the corresponding provisions of the French Code.
An issue almost identical to that presented here was considered in the case of Ohanna v. Ohanna, La.App. 4 Cir., 129 So.2d 249 (Cert. denied). In that case the wife brought a suit against her husband for separation from bed and board in 1952. No judgment was ever rendered in that suit. Two years later the wife filed another suit against her husband for an absolute divorce on the grounds of their having lived separate and apart for more than two years. While these suits were pending, the husband executed four promissory notes, one of which was executed while the separation suit was pending, but before the action for divorce was filed. There was no finding that the debts were incurred with the fraudulent view of injuring the rights of the wife. The court held that under those circumstances the obligations evidenced by these notes were not community debts.
*150 After quoting Article 150 of the LSA-Civil Code, the court said:
"Defendant argues that the provisions of the above-quoted article have no application to any debts he might have incurred on account of the community because such debts were created in good faith and not with the fraudulent view of injuring his wife's rights. A reading of the article compels a conclusion that it does not establish as a standard that the debts must be fraudulent. LSA-C.C. art. 150 plainly distinguishes between contracting a debt on account of the community and the disposing of or alienating the community immovables and provides that a fraudulent alienation shall be null. No requirement is made that a contract of indebtedness to be unlawful must be made with the view of defrauding the wife. Our opinion is that under the clear terms of said codal article debts such as the ones due by the husband to Berger Bros., if contracted for the account of the community after the suit is filed, are unlawful.

* * * * * *
"* * * it is clear under the provisions of LSA-C.C. art. 150 such indebtedness is not due by the community because the husband could not lawfully contract any debt on account of the community during the pendency of either the suit for separation or the divorce suit."
Under the rule which was applied in the Ohanna case, it seems to us that the indebtedness of John Ceasar to Landreneau must be considered as the separate debt of John Ceasar, and not a community obligation.
It is argued, however, that Landreneau had no notice of the separation suit or of the judgment enjoining John Ceasar from alienating or mortgaging community property, and that since no "notice of lis pendens" was filed in connection with the separation suit, Landreneau had the right to assume that John Ceasar could legally obligate the community, and that he did so when he executed the promissory note. In support of this argument counsel relies on the provisions of LSA-R.S. 13:3541, which reads as follows:
"The pendency of an action in any court, state or federal, in the state affecting the title, or asserting a mortgage or lien upon immovable property, shall not be considered or construed as notice to third persons not parties to such suit, unless a notice of pendency of such action shall have been made, filed or registered, in compliance with R.S. 13:3541 through 13:3543."
In our opinion, this section of the Revised Statutes is not applicable here. When the debt from John Ceasar to Landreneau was incurred on June 16, 1955, it did not purport to affect the title to or to create a mortgage or lien on immovable property. The status of the debt, that is, whether it was a community or a separate debt, was established as of that time, and the subsequent reducing of the claim to judgment did not have the effect of changing it from a separate to a community obligation. No attachment was ever issued in this suit, and no attempt to seize the real property here in question was made until after the partition sale to Lucius Ceasar had been completed. The argument that Landreneau had the right to rely on the public records, that is, the conveyance and mortgage records of Allen Parish, to determine the marital status of John Ceasar at the time of the execution of the promissory note and act of chattel mortgage (actually an act of crop pledge and chattel mortgage) is without merit. No authority to that effect has been pointed out to us, and we know of none. Also, it seems to us that Landreneau could not have been prejudiced in any way by the failure of Mabel Victorian Ceasar to file a notice of lis pendens, because there apparently was nothing in the mortgage or conveyance records of Allen Parish to show that John Ceasar had ever been married, and in the act of crop pledge and chattel mortgage which he executed in favor of Landreneau he identified himself as "a *151 widower." A search of the records, therefore, would not have indicated to Landreneau that John Ceasar was married or that a community of acquets and gains existed between him and anyone else.
We conclude that since the indebtedness of John Ceasar to Landreneau was incurred while a suit for separation from bed and board was pending against John Ceasar, and since the community actually was dissolved while that suit was still pending, the latter could not lawfully obligate the community, and accordingly, his indebtedness to Landreneau was not a community debt, but was his own separate obligation.
In view of our conclusion that this indebtedness is not a community obligation, it is unnecessary for us to determine whether the community had been dissolved prior to the time the debt was incurred.
Finally, and in the alternative, counsel for Landreneau argues that community property is subject to seizure and sale for the debts of the husband's separate estate, and in support of that argument he cites the cases of Davis v. Compton, 13 La.Ann. 396 (1858); Stafford v. Sumrall, La.App. 1 Cir., 21 So.2d 83 (1945); Hawley v. Crescent City Bank, 26 La.Ann. 230 (1874). It was held in those cases that community property may be seized and sold to pay the debts of the husband contracted before the marriage, but in none of such cases did the court consider the question of whether creditors of the community are entitled to be paid in preference to creditors of the separate estates of the spouses.
We think the jurisprudence of this State has been established to the effect that upon the dissolution and liquidation of a community of acquets and gains, the creditors of the community are entitled to be paid from the community assets in preference to the creditors of the separate estates of the spouses, and the fact that the separate debt of one of the spouses is later reduced to judgment does not diminish or in any manner affect the rights of the community creditors to such a priority. Newman v. Cooper, 46 La.Ann. 1485, 16 So. 481; Neal v. LaPleine, 48 La.Ann. 424, 19 So. 261; Thompson v. Vance, 110 La. 26, 34 So. 112.
In the instant suit we conclude that the creditors of the community which formerly existed between John Ceasar and Mabel Victorian Ceasar, although some of their claims may be unsecured, are entitled to be paid from the proceeds of the partition sale in preference to the claim of Landreneau against the separate estate of John Ceasar.
As we have already pointed out, the community of acquets and gains which formerly existed between John Ceasar and his wife was dissolved before a partition of the community assets was ordered by the district court. The partition sale held on February 21, 1957, was valid, and by that sale Lucius Ceasar acquired title to the real property involved here. Under those circumstances, we think Lucius Ceasar is entitled to have the Landreneau judgment cancelled insofar as it affects the real property which he purchased at that partition sale, and it necessarily follows that he is entitled to the injunctive relief which he seeks. Since he obviously will not be required to pay any part of the Landreneau judgment, there is no basis for Lucius Ceasar's third party demands against the Clerk of Court.
The creditors of the community, whether their claims are secured or unsecured, are entitled to be paid from the proceeds of that sale in preference to the claim of Landreneau. Landreneau, however, as the holder of a judicial mortgage against the separate estate of John Ceasar, is entitled to be paid by preference over all other creditors out of and from that portion of the net proceeds of the sale (after payment of the community debts) which otherwise would be due and payable to John Ceasar.
If the failure of the Clerk of Court, or his deputy, to include the Landrenea *152 judgment on the mortgage certificate furnished in connection with the partition sale causes Landreneau to receive less from the proceeds of the partition sale than he otherwise would have received, then we think the Clerk of Court is liable to Landreneau for that loss. The record indicates that the notary who handled the disbursement of the proceeds of the partition sale paid the sum of $50.00 to John Ceasar, and the aggregate sum of $422.50 to Mabel Victorian Ceasar, and that he has remaining in his possession $107.11. The record, however, does not indicate whether the payments to Mabel Victorian Ceasar were for debts owed by the community to her separate estate or were made as a partial distribution of the net proceeds of the sale. Also, the evidence does not show the total amount which should be, or which should have been, paid to Landreneau, as the judgment creditor of John Ceasar, from the net proceeds of the partition sale and the liability of the Clerk to that creditor, if there is any such liability, cannot be determined until that is established and all of such proceeds have been distributed.
Under the facts and circumstances presented here, we think the judgment of the trial court should be reversed, that the Landreneau judgment should be cancelled insofar as it affects the real property purchased by Lucius Ceasar at the partition sale, that the demands of the latter for injunctive relief should be granted, and that the case should then be remanded to the district court in order that the extent of the liability of the Clerk of Court, if any, to Landreneau for the Clerk's failure to show the judicial mortgage on the mortgage certificate may be determined and adjudicated.
Ordinarily, no relief would be granted to Landreneau since he filed no pleadings in the matter which was determined by the district court. The trial judge in his reasons for judgment, however, states that the parties to the suit wish to "overlook" the fact that Adraste Landreneau has filed no pleadings in connection with the matter here presented for decision, and in the decree it is recited that all parties have agreed "that the judgment herein should go beyond the informalities, which are waived, and be declaratory of the rights, obligations, and immunities of all parties." In view of these stipulations, we have decided to consider all of the issues presented and to grant the relief to which we think each party is entitled, as though proper pleadings had been filed by each such party demanding that relief.
For the reasons herein set out, therefore, the judgment appealed from is reversed, and
It is ordered, adjudged and decreed that the judgment in favor of Adraste Landreneau and against John Ceasar, dated November 28, 1955, and recorded in Book 45 at page 24 of the Mortgage Records of Allen Parish, Louisiana, be and the same is hereby ordered cancelled and erased from said records insofar, and insofar only, as said judgment affects the following described property located in Allen Parish, Louisiana, to-wit:
A certain tract or parcel of land together with all buildings and improvements thereon, being lot No. 3 of Section 35, T-5-S, R-3-W, bounded North by Calcasieu Marine National Bank, South by Hall, et al., West by Olivier Victorian, and East by Alcide Granger, and being the same property described at Conveyance Book C11, Page 302, Allen Parish Conveyance Records.
It is further ordered, adjudged and decreed that judgment be rendered in favor of plaintiff, Lucius Ceasar, and against the defendants, Adraste Landreneau and the Sheriff of Allen Parish, enjoining and prohibiting said defendants from selling the above-described property under the writ of fieri facias issued herein.
It is further ordered, adjudged and decreed that this suit be remanded to the district court for further proceedings in accordance with the views herein expressed.
*153 All costs of this appeal are assessed in equal proportions to Adraste Landreneau, Plaintiff-Appellee, and to Percy A. Cole, Clerk of Court and Third Party Defendant-Appellee. The costs incurred in the district court are to be assessed by the trial judge upon the final disposition of the case.
Reversed, rendered in part and remanded in part.

On Application for Rehearing.
En Banc. Rehearing denied.