486 P.2d 819

**Pauline M. WILSON, Appellant,**

v.

**Carolyn M. POLACEK, Appellee.**

**No. 1 CA–CIV 1381.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 8, 1971.

Rehearing Denied Sept. 29, 1971.

Review Denied Oct. 27, 1971.

**140**

Raymond Huffsteter, Phoenix, for appellant.

Roe & McDonough by Fenton J. McDonough, Scottsdale, for appellee.

HAIRE, Judge.

The central question raised by the appellants on this appeal concerns the authority of the husband to contract community debts during the pendency of a divorce action. The litigation in the trial court seeking to impose community liability was commenced after the entry of the divorce decree which dissolved the community, and arose out of the execution and delivery of promissory notes by the husband to a third party while the husband and wife were separated and while the divorce action was pending. The pertinent facts are as follows.

Sometime after Pauline Wilson (the appellant-wife) had filed suit for divorce, but prior to the judicial dissolution of the marriage, W. Francis Wilson, her husband, executed and delivered to Carolyn M. Polacek (the appellee creditor herein) two promissory notes aggregating $19,000.00. Mrs. Polacek was permitted to testify, over the appellant's objection, that Mr. Wilson advised her that the funds were to be used in connection with a grape ranch which the Wilsons then owned as community property, situated in the Harquahala Valley. However, no evidence was introduced to prove that the borrowed funds were in fact used in connection with the grape ranch. Mrs. Wilson did not sign these notes, nor did she know of these transactions at the times they occurred, nor has she ever assented to them. At the time of these transactions, Mrs. Polacek knew that Mr. and Mrs. Wilson had separated, but there is no evidence that she knew of the then pending divorce proceedings.

In the trial court summary judgment was entered against the defendant-husband, and the question of the wife's liability (to the extent of community assets) proceeded to a jury trial, which culminated in a verdict and judgment against the defendant-wife. She urged in the trial court, and now urges on appeal, that A.R.S. § 25–314 absolutely precludes the husband from contracting debts on account of the community during the pendency of a divorce action, and that such debts contracted during this period are his own separate debts irrespective of the benefits intended to be or actually conferred upon the community. A.R.S. § 25–314 reads as follows:

"After an action for divorce is filed, the husband shall not contract any debts on account of the community property nor dispose of such property. Any alienation made by the husband after the action is filed shall be null and void if made with a fraudulent intent to injure the rights of the wife."

Although A.R.S. § 25–314 comes to us from Texas [1] the only cases from other jurisdictions which the Court has been able to discover directly dealing with the debt contracting provision of a statute of this nature are Louisiana cases construing a

---

1. Tex.Rev.Civ.Stat.Ann., Art. 4634 (Vernon 1960). We note that in 1969 the Texas statutory provision was extensively revised and amended, apparently so as to meet problems similar to those raised in this appeal. V.T.C.A.Texas Family Code § 3.57 (West 1969).

similar statute adopted in that jurisdiction.[2] The Louisiana cases we refer to have construed their statute as creating a dichotomy between the contraction of community debts on one hand and the alienation of property on the other, holding that the debts contracted by the husband after the filing of an action affecting the marriage relationship are not community obligations, although such debts would otherwise be an obligation of the community. On the other hand, alienations of property by the husband are held to be valid unless made with a fraudulent intent to injure the rights of the wife. Landreneau v. Ceasar, 153 So.2d 145, 149 (La.Ct.App.1963); Ohanna v. Ohanna, 129 So.2d 249, 253 (La.Ct.App. 1961). In Ohanna, *supra*, the court said:

> "Defendant argues that the provisions of the above-quoted article have no application to any debts he might have incurred on account of the community because such debts were created in good faith and not with the fraudulent view of injuring his wife's rights. A reading of the article compels a conclusion that it does not establish as a standard that the debts must be fraudulent. LSA–C.C. art. 150 [see footnote 2, *supra*] plainly distinguishes between contracting a debt on account of the community and the disposing of or alienating the community immovables and provides that a fraudulent alienation shall be null. No requirement is made that a contract of indebtedness to be unlawful must be made with the view of defrauding the wife. Our opinion is that under the clear terms of said codal article debts such as the ones due by the husband to Berger Bros., if contracted for the account of the community after the suit is filed, are unlawful." 129 So.2d at 252–253.

It should be noted that in Landreneau, *supra*, the court conceded that Article 271 of the Code Napoleon, which was the source of La.Civ.Code. art. 150, seemed to provide that an "obligation" made by the husband pending the suit, as well as an "alienation", may not be annulled unless there was fraud against the wife. The court concluded, however, that the Louisiana redactors must not have intended that the Louisiana law be identical to the corresponding provisions of the French Code. Landreneau, *supra*, 153 So.2d at 149.

While our own statute might appear susceptible to a similar construction, we are guided by the construction given thereto by our Supreme Court in Spector v. Spector, 94 Ariz. 175, 382 P.2d 659 (1963). There, the wife contended, in a suit between the parties for a divorce, that certain debts incurred by the husband in the management of the community business after the filing of the divorce should be regarded as separate debts of the husband. The court answered appellant's contention that A.R.S. § 25–314 absolutely prohibits the husband from contracting such community debts during the pendency of a divorce suit, as follows:

> "A construction of the statute which would result in a flat prohibition against the contracting of debts by the statutory manager of the business affairs of the community property during the pendency of a divorce could result in destruction of the property itself. The burden is, of course, upon the husband to justify his management of the business, and any debts incurred. If the husband has justified his management to the trial court's satisfaction, as it appears was the case here, he has shouldered his burden." Spector v. Spector, 94 Ariz. at 182, 382 P.2d at 663.

2. La.Civ.Code art. 150 (West 1952), provides as follows:

"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife."

■ It is true that Spector was a suit involving only the husband and wife, and did not directly involve the rights of a third party. However, insofar as concerns the question of whether A.R.S. § 25–314 *absolutely prohibits* the husband from validly contracting debts for a community purpose during the divorce pendency, the principles announced are equally applicable to a situation involving the rights of third parties.

■ The next contention urged by the appellant-wife is that even assuming that A.R.S. § 25–314 does not absolutely prohibit the husband from contracting debts for a community purpose, it does operate to destroy the well-established presumption that debts created by the husband during coverture are community obligations, and, as to debts incurred during the pendency of divorce proceedings, shifts the burden of proving the existence of a community benefitting intent and purpose to the party seeking to enforce community liability. We note that in Spector, *as between the husband and wife*, the court does indicate that the community obligation presumption vanishes when A.R.S. § 25–314 becomes applicable, stating that:

> "The burden is, of course, upon the husband to justify his management of the business, and any debts incurred." Spector v. Spector, 94 Ariz. at 182, 382 P.2d at 663.

Appellee urges that, absent a showing of fraud or collusion between the husband and the third party, the debt-contracting provisions of A.R.S. § 25–314 do not have any application to actions brought by third parties, and thus, the argument continues, A.R.S. § 25–314 and Spector require the husband to justify his actions only to his wife, and not to third parties. While this construction might facilitate the incurring of indebtednesses by the husband on behalf of the community during the divorce action pendency, and might ease somewhat the burden imposed upon a creditor seeking to obtain an adjudication of community liability for such an indebtedness, we do not believe that either A.R.S. § 25–314 can be so completely read out of existence, or that such a holding would be in accord with the principles enunciated in Spector. We conclude that a party asserting community liability for an indebtedness based upon a contract entered into with the husband subsequent to the commencement of divorce proceedings has the burden of proving the existence of a community benefitting intent at the time the debt was incurred, or that the use of such funds were for a community purpose. Such a party does not have the benefit of any presumption that the husband was acting for and on behalf of the community in incurring that indebtedness. This rule might at first blush seem harsh when applied against a creditor without knowledge of the pendency of the divorce proceedings. However, the burden thus imposed upon such a creditor must be balanced against the obvious statutory policy evidenced by A.R.S. § 25–314 of providing some degree of protection for the wife against debts contracted by the husband alone during the pendency of the divorce action.

In arriving at the above-stated conclusion, we have considered cases from other community property jurisdictions, but have not found them particularly helpful because of the absence of statutes similar to A.R.S. § 25–314.[3]

---

3. In Somps v. Somps, 250 Cal.App.2d 328, 58 Cal.Rptr. 304 (1967), involving an action between husband and wife, even in the absence of any statutory provisions similar to § 25–314, the court refused to apply any presumption that the debt incurred was for a community purpose, and held that the husband must show that the expenditures of loan funds benefitted the community in order to justify treatment of the loan as a community property obligation. However, in Dizard & Getty v. Damson, 63 Wash.2d 526, 387 P.2d 964 (1964) again in the absence of any statute similar to § 25–314, the Washington court held that during the pendency of the divorce proceedings, the presumption continued, and that the burden of proof was upon the wife to show the absence of a community benefitting

The trial court, over the appellant-wife's objection, instructed the jury as follows:

"Any indebtedness incurred in furtherance of a community purpose is a community indebtedness.

"The law of this state applied to the facts which have been agreed to by the parties creates a *presumption* that the indebtedness herein sued upon is the community indebtedness of W. Francis Wilson and Pauline M. Wilson." (Emphasis supplied).

In view of our above-stated conclusions, we hold that the giving of such instruction was erroneous and requires that the judgment for the plaintiff be reversed and the matter remanded for a new trial or other disposition not inconsistent with this opinion.

One other matter remains to be considered, and that is defendant-wife's appeal from the trial court's denial of her motion to quash a writ of garnishment issued in this action, directed to Transamerica Title Company as garnishee-defendant. Defendant contends that the writ is invalid because the bond posted was less than the amount of the "claim". Factually, the complaint alleged five counts seeking a total indebtedness of $22,925.00 plus interest and reasonable attorney's fees. The plaintiff's affidavit for writ of garnishment, filed pursuant to A.R.S. § 12–1573, erroneously stated the indebtedness at $32,925.00 plus interest and attorney's fees, but requested the issuance of a writ for the sum of $25,000.00 and was accompanied by a bond in that amount. The writ when issued stated the claimed indebtedness at

$25,000.00. Under these circumstances, we find no inadequacy in the amount of the bond. The governing statute, A.R.S. § 12–1572,[4] requires that the bond be in the amount requested *in the writ*, and this requirement was fully met by the bond in question.

The judgment for the plaintiff is reversed, and the trial court's denial of the motion to quash the writ of garnishment is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.

intent. As to the power of the husband to manage, contract with and dispose of community property during pendency of divorce proceedings, *see* Lohbeck v. Lohbeck, 72 N.M. 78, 380 P.2d 825 (1963); Benson v. District Court, 57 Idaho 85, 62 P.2d 108 (1936).

4. A.R.S. § 12–1572 provides as follows:
"In the cases mentioned in paragraph 2 of subsection A, § 12–1571, the plaintiff shall execute a bond to be approved by the officer issuing *the writ*, payable to defendant in the action in the amount of the debt *claimed therein*, conditioned that he will prosecute the action to effect and pay all damages and costs sustained by defendant by reason of the wrongful suing out the writ of garnishment." (Emphasis supplied).