## KELLER v. KELLER.

### No. 10625.

Court of Civil Appeals of Texas. Galveston.
Nov. 3, 1938.

Rehearing Denied Dec. 8, 1938.

J. C. Hutcheson, III., of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellant.

Williams, Lee, Sears & Kennerly, of Houston (Geo. D. Sears, of Houston, of counsel), for appellee.

CODY, Justice.

This is a suit by appellant, the former wife of appellee, to recover reparation from him on account of certain items of property which she alleged formed a part of their community estate, and that it was not included, nor accounted for, in the division of their property, which was had at the time of their divorce some two years before the institution of this suit.

In contemplation of divorce appellant and appellee entered into an agreement dividing specified items of community property, and setting aside to appellant her separate property, on November 16, 1933. This agreement was incorporated in the divorce decree which was rendered on December 22, 1933. The agreement has no general or residuary clause awarding to either party any property not therein included. The following three items of property were not, eo nomine, included in the settlement, nor in the decree embodying the settlement, and appellant alleged that they were community property, and that she and appellee remained the owners of such property after their divorce, unaffected by the settlement agreement and decree.

First Item: An indebtedness of $21,000 owing to appellee at the time of such settlement by the Cooper-Keller Oil Company, which was paid to appellee in full, five days after the divorce decree.

Second Item: An item of $20,000 owing to appellee by the Cooper-Keller Oil Company as salary for the year 1933, and which was paid to him in full about the end of 1934.

Third Item: 50 shares of the capital stock of the Cooper-Keller Oil Company, of the value of $46,250.

As to the first two items it is appellant's contention that they were not included in the settlement agreement because she knew nothing of them; that appellee concealed their existence from her. As to the fifty shares of stock, appellant concedes that it was the intention of the parties that it should have gone to appellee by the terms of the agreement, for she knew that one-half of the shares of the capital stock was the community property of herself and appellee, but by a mutual mistake it was supposed that the capital stock consisted of 100 shares, whereas, in reality, it consisted of 200 shares, so that in apportioning the stock in the corporation to appellee the parties should have described it as 100 shares, instead of 50 shares, as they in fact did. She concedes that this error should have been corrected by reforming the settlement agreement, except that she asserts appellee has cut himself off from the right to this equitable remedy, by having deceived her with respect to items No. 1 and No. 2. She claims, therefore, that as to the remaining 50 shares of stock, that she must be decreed an interest therein, or receive reparation therefor, in consequence of appellee having no right to have the settlement agreement reformed to carry into effect the mutual understanding that appellee should have all the stock in Cooper-Keller Company.

■ If the items of property No. 1 and No. 2 were community property at the time of the divorce, and were not taken into account in the division of the prop-

erty between appellant and appellee, neither she nor he were debarred of their rights therein by such division. Gray v. Thomas, 83 Tex. 246, 18 S.W. 721. And ·this is true even though the reason for not doing so was mere inadvertence. Kirberg v. Worrell, Tex.Com.App., 44 S.W.2d 940. So, if as to items 1 and 2, the proof established that they were community property at the time of the divorce, and that they were not taken into account in the division of the property, appellant was not debarred of her rights therein, by the settlement, or by the decree which embodies the settlement.

■■ It will be noted that each of the items for which appellant is seeking reparation is connected in some way with the Cooper-Keller Company. Concerning this company the trial court made comprehensive findings of fact which are much too long to be reproduced, and, from the view we take of the case, many of them are immaterial. The substance of such as are material is this: For some eight years before the settlement agreement, appellee engaged in the oil brokerage business. For several years this business was carried on as a partnership under the name of Cooper-Keller Oil Company, appellee being full partner of B. P. Cooper. In the last of 1931, the business was incorporated with a capital stock of $20,000, divided into 200 shares of stock, 100 shares of which belonged to the community of appellant and appellee, and the other half belonged to Cooper, though no stock was actually issued until December, 1934. During the years 1932, 1933, and 1934 the corporation speculated heavily in crude oil, buying it to rise. Its loans from banks in September of 1933 totalled $103,000. By reason of rises in the market, and of sales, these bank loans had been reduced to $40,000 in November, 1933. During this speculation Cooper advanced the corporation $31,-000,. and appellee advanced it $21,000, and these sums were also invested in buying crude. These two items were carried on the books as notes payable to Cooper and to Keller, respectively, though no notes covering them were actually executed. The trial court has found as fact that there was no intent on the part of appellee to perpetrate any fraud on appellant with respect to this item of $21,000. It was immaterial whether the failure to take this item into account was the result of any intent to defraud appellant or not, as we have already indicated, if it was com-munity property and was not in fact taken into account in the division of the property. And that it was not taken into account, eo nomine, is undisputed. In fact it is undisputed that Cooper, appellee's associate, fearing that appellant would learn of this $21,000 loan, and demand that it be paid at a critical period in the Company's speculation, deliberately, and with the knowledge and consent of appellee, had the Company's books changed to make it appear that this $21,000 loan had been made to the Company by himself. The court below further found, under the heading of findings of fact, "The $21,000.00 book item was so much intertwined with the business in its then hazardous condition that it could not be and was not dealt with separately from his (appellee's) stock ownership." This we believe· to be in reality a conclusion of law arrived at by the court from the facts found by him, and a conclusion of law that is erroneous. The court had found that this $21,000 advance had been used to purchase crude oil, just as the bank loans had been employed. Had the speculation been unsuccessful, and the corporation had become insolvent, appellant and appellee, in virtue of the $21,-000, loan would have occupied the status of creditor of the corporation, and would have been entitled to participate in the payments made by such corporation to the creditors. No doubt the bank loans became intertwined with the business of the Company, indeed the money was borrowed in order that it might be intertwined with the business of the Company. But the bank loans were duly paid off, and the $21,000 advance was also duly repaid to appellee, and repaid to him five days after entry of the divorce decree. Whether this advance constituted a debt, or not, was a question of law, and not a question of fact, and we have no doubt that, as a matter of law, the $21,000 was a debt. And, since as to community, a husband is in a restricted sense a trustee for his wife, bound to good faith (McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357), he should have disclosed this item: and when he received payment of it, to the extent of one-half of it, he received it in trust for appellant.

■ The trial court has found that item No. 2, which was set up on the books of the Cooper-Keller Company as salary due appellee, was not salary in fact, but that the entry was made in order to lessen in-

come tax. As we understand the finding of the trial court, this entry of $20,000 on the books of the corporation as salary due from it to appellee for the year 1933 was made in reality in anticipation of profits that were made in 1934, and as a cover to pass them to appellee so that a smaller income tax would be assessed than if they were designated, what they really were, dividends on the stock which was awarded to appellee in the settlement. Appellant has not pointed out in what respect the proof made on the trial fails to sustain this fact finding. Though she does contend that, since the evidence shows that appellee filed income tax returns showing this item as community income for 1933 and charged appellant with an income tax on $10,000, this item must be held to be community income for the year 1933 as a matter of law, though not earned or realized until the last of 1934. It will be borne in mind that we are not dealing here with income tax laws. If the entry on the books of the corporation of $20,000 as salary due appellee for the year 1933 constituted a debt against the corporation for his salary for that year, it is doubtless true that it belonged to the community estate. But had the corporation become insolvent, and had the facts found by the court about this $20,000 entry come to light, neither appellee nor appellant would have occupied the status of a creditor of the corporation, and shared with other creditors in the corporation's assets. If it was not in fact income earned before the divorce, appellant has no right to share in it.

Under our view of this case, giving appellant judgment against appellee for one-half of the sum of $21,000, together with interest thereon at the rate of 6% per annum from the day it was paid to him (December 27, 1933), constitutes complete legal reparation with respect to that item. Certainly no wrong was practiced on her with respect to item No. 3. She not only agreed that appellee should be awarded all the stock owned by the community estate in the Cooper-Keller Company, but expressly obligated herself in the settlement agreement to correct any error made in the property awarded thereby. Since no wrong was practiced on her with respect to item No. 3, and she fully intended that such property should be awarded to appellee, and the correction of this description can do her no injury, and she is expressly bound by her written agreement to make such correction, we do not see why appellee is not entitled to have the settlement agreement and divorce decree reformed to correct the misdescription, as the trial court did. Appellee's failure to disclose concerning item No. 1 does not, in our opinion, disable him from having justice from appellant with respect to item No. 3. Judgment awarding appellant complete reparation in connection with item No. 1 takes that item out of consideration. But even if reformation of the description of the stock so as to include item No. 3 should be denied appellee, it would not necessarily follow that any part of it (or reparation for any part of it) would therefore be awarded to appellant. This is true because the stock was not actually issued to appellee until late in 1934, and was then by him sold. If appellant should be adjudged to be entitled to any proceeds of such stock, it would be only because the stock when issued to appellee was held by him partly in trust for appellant. And if it should be adjudged that appellee held a portion of the proceeds of such stock in trust for appellant, in what position is appellant to ask a court of equity to compel appellee to turn over the proceeds of the sale of stock, which she admits is justly his, and which she intended should be his.

For the reasons given, the judgment of the trial court is reversed in so far as it denied appellant any recovery in connection with item No. 1, and judgment is here rendered in that connection that appellant recover from appellee one-half thereof, or $10,500, together with interest thereon at the rate of 6% per annum from December 27, 1933 (the date such sum of $21,000 was paid to appellee by the Cooper-Keller Company). In all other respects the judgment of the trial court is affirmed, except that the costs of the court below are adjudged against appellee.

Judgment affirmed in part, and in part reversed and rendered, Judge MONTEITH participating as Special Commissioner.

## On Motions for Rehearing.

CODY, Justice.

Both appellee and appellant have filed motions for rehearing. We will dispose of appellee's motion first.

Appellee has ably and energetically assailed the view expressed in our former opinion to the effect that the $21,000 advancement constituted a debt due from the

corporation to the community estate of appellee and appellant, so that, when such advancement was repaid five days after the divorce decree was rendered, the money so repaid, to the extent of one-half thereof, belonged to appellant. Appellee contends, as we understand him, that the advancement by him of $21,000 out of community funds to the corporation cannot properly be held to have created a debt, because such advancement was made upon the understanding that it was not to be paid back unless and until the corporation was able to repay it. Whether this advancement to the corporation of community funds created such an obligation as could have been recovered in an action of debt at common law is not decisive of whether the obligation of the corporation to repay the advancement was in favor of appellee individually, or as the representative of the community estate of himself and former wife. That the corporation was contingently liable to repay appellee the $21,000, from the moment he made the advancement, is obvious. Since appellee made the advancement out of community funds, he made it as the representative of the community estate of himself and former wife. So his right to receive repayment of the $21,000 advancement was correlative to the contingent liability of the corporation to repay such advancement. As this right arose because of advancement of community funds, made during the marriage relation, it was a right belonging to the community estate. The fact that the right to receive payment became absolute five days after the marriage status had become dissolved did not bar the right of either appellee or appellant to share equally in the $21,000, which had theretofore been advanced from community funds.

In other words, even though the obligation of the corporation to repay appellee, as the representative of the community estate of himself and former wife, was only contingent, yet, when the contingent liability ripened into an absolute liability, the corresponding absolute right to receive payment was the right to receive payment as the representative of the former community estate of himself and his former wife. The failure to take into account, in making division of their community estate, a debt, whether it be a contingent or an absolute obligation, does not alter the rule that, as to property that was not divided, divorced spouses are equal co-owners.

Appellee's motion for rehearing is refused.

We stated in our former opinion that the trial court had found that item No. 2, for $20,000, which was set up on the books of the corporation as salary for the year 1933, was not salary in fact, but was set up as salary solely for the purpose of lessening income tax for that year. Appellant finds no fault with that statement. But she strongly contests the correctness of the construction placed by our former opinion on it where we said: "As we understand the finding of the trial court, this entry of $20,000.00 on the books of the corporation as salary due from it to appellee for the year 1933 was made in reality in anticipation of profits that were made in 1934, and as a cover to pass them to appellee so that a smaller income tax would be assessed than if they were designated, what they really were, dividends on the stock which was awarded to appellee in the settlement." She insists there is no evidence in the record to support this construction, but, that on the contrary, the evidence is directly opposed to this construction. The evidence relied on by appellant as opposed to such construction —and which we take to be undisputed— is to this effect: that according to the books of the corporation, its earnings or profits for the year 1933 amounted to $54,000; that after there had been set up as salary on its books for the two owners of its stock, the sum of $40,000 (i. e., $20,000 each), the corporation had a net income of $14,000, which amount it showed on its income tax return for 1933, as its net income; but that it did not pay these two items of $20,000 (designated on its books as salary for the year 1933) until near the end of the year 1934, because there was no money with which to pay them. It is quite evident to us, even from the evidence cited by appellant, that the corporation had made large paper profits in 1933—paper profits sufficiently large to authorize a reasonable expectation or anticipation that at least $40,000 (which was set up as salary in 1933) would be realized as income, when the stock of crude oil, in which paper profits were invested, was sold. We are not prepared, therefore, to withdraw the construction placed on the trial court's finding of fact, which appellant assails as erroneous.

The trial court's conclusion, however, that the $20,000 item was not community property, but was the separate property

of appellee, is not necessarily dependent upon the correctness of our view that it did not become income until it was realized, or "came in", in 1934. It was evidently the trial court's view, and one in which we share, that in transferring to appellee all of her right and interest in the stock of the corporation, appellant parted with and vested in appellee all the benefits and burdens which appertained to the ownership of such stock, inclusive of the right to share in any distribution of the assets of the corporation made to its stockholders, in virtue of the stock owned by them. At the time of the division of the community property, there was no back salary due to appellee from the corporation. If there was no salary due appellee for the year of 1933 on November 16, 1933, which was the date of settlement agreement, and none due him on December 22, 1933, the date of the divorce, the mere fact that an entry was made in the books on December 31, 1933, that salary was due him in the sum of $20,000 for the year, would not be sufficient to establish that such $20,000 was really salary. As there was no liability of the corporation to appellee for any salary at all until after the marriage relation had been dissolved, it is quite evident that the liability set up on the books of the corporation on December 31, 1933, as salary for the year 1933, was not a liability to the community estate for salary for 1933, in the sense that salary is ordinarily used, as being personal earnings. On the contrary, it is quite evident that such liability became due to appellee solely in virtue of his ownership of the stock, and after appellant had parted with all interest therein. The trial court was abundantly warranted in finding that the $20,000 which was entered as salary for 1933 on the books of the corporation was not really salary, but was an entry made on the books to lessen income tax. Indeed, such conclusion is compelling, as the only rational explanation consistent with all the facts.

We are unable to agree with appellant that appellee is estopped to claim, as against her, that the $20,000 was not salary for the year 1933. She could recover from appellee any sum, wrongfully collected from her as a contribution toward income tax, upon proper pleading and proof.

Appellant's motion for rehearing is refused.

Both motions, appellee's and appellant's, for rehearing refused, Judge MONTEITH participating as Special Commissioner.