NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BLAKE WILLIAM STEVENSON, *Petitioner/Appellee*,

*v.*

CELENA STEVENSON, *Respondent/Appellant*.

No. 1 CA-CV 25-0017 FC

FILED 11-24-2025

Appeal from the Superior Court in Maricopa County
No. FC2022-091871
The Honorable Charlene D. Jackson, Judge

**AFFIRMED**

COUNSEL

Barreda Law PLLC, Gilbert
By Joshua A. Barreda
*Counsel for Petitioner/Appellee*

Cervone Law P.C., Phoenix
By Kristina L. Cervone
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Veronika Fabian joined.

---

**M O R S E**, Judge:

¶1         Celena Stevenson ("Mother") appeals the superior court's dissolution decree ("Decree").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         Blake Stevenson ("Father") and Mother married in 2014 and have three minor children ("Children") together.  Father petitioned for divorce in April of 2022.  Three months later, the parties entered into a binding Rule 69 agreement ("Agreement") for joint legal decision-making and equal parenting time.  At the time of the Agreement, Father knew that Mother suffered from mental-health issues, was medicated, and had experienced auditory hallucinations—including a suicide attempt prompted by imaginary voices.

¶3         In January of 2023, Father petitioned the court for an emergency temporary order granting him sole legal decision-making and suspending Mother's parenting time.  Father cited Mother's untreated mental-health issues, and Mother's discussions with the Children about the voices in her head.  In a deposition, Mother stated her hallucinations now involved gang stalking, remote neural monitoring, and voices asserting that she was not the Children's biological mother.  Father expressed concern about Mother's ability to care for the Children based on her mental-health issues.  The court granted Father's request and ordered a psychological evaluation for Mother.

¶4         The court modified the order to allow Mother four hours of supervised parenting time a week.  The court stated that Mother's auditory hallucinations had expanded to involve the Children and increasing Mother's parenting time would depend on her psychological and medical evaluations, treatment-plan compliance, and advisor recommendations. The court set trial for August 30, 2023.

¶5            In June of 2023, the court denied Mother's motion to modify its prior order, reiterating its prior findings and noting that she had not completed a psychological evaluation or begun counseling.  At her request, the court continued the trial to February 5, 2024.  In January of 2024, the court bifurcated the trial to allow further discovery into Father's online banking records, investment activity, and electronic devices.  This extended Mother's opportunity to investigate her claim that Father's investment activity could total $5.45 million dollars.

¶6            In December of 2023, Mother completed a court-ordered psychological evaluation.  The psychologist diagnosed her with "other specified schizophrenia spectrum and other psychotic disorder — attenuated psychosis syndrome," and recommended various treatments.  But the psychologist concluded that Mother did not meet the criteria for Schizophrenia Disorder and noted that she maintained a level of insight and her auditory hallucinations were "less severe and more transient," than required for a schizophrenia diagnosis.

¶7            At the time of evaluation, the psychologist determined that Mother's disorder was in remission because she was not experiencing any symptoms.  But the psychologist noted that parts of the evaluation were only marginally valid as Mother seemed to be trying to make a good impression, as is common in child-custody cases.  Mother also stated that she felt her hallucinations occurred during times of stress, especially involving Father's infidelity.  The psychologist opined that nothing indicated that Mother was unfit or had thoughts of harming her children.

¶8            On the first day of trial in February 2024, the court chose to address all financial accounts except Father's account in an online investing platform ("Robinhood Account").  Mother's counsel objected, stating that in a prior order the court had indicated that financial matters would be addressed on the second day of trial.  But Mother's counsel then confirmed readiness to proceed.

¶9            After the first day of trial, the court granted Mother's motion to continue the second trial date.  She later sought a second continuance for further discovery into Father's electronic accounts and time for expert analysis, which the court denied.  Mother then moved to vacate the hearing citing a lack of new evidence despite her ongoing discovery efforts and requested the court enter the decree.  The court granted this motion.

¶10          The court issued the Decree with the following terms:

*Parenting Time*

¶11          The court designated Father as the primary residential parent, with the Children spending every other weekend and one weeknight with Mother.  Applying the A.R.S. § 25-403(A) best-interest factors, the court considered Mother's testimony that stress from the dissolution process had exacerbated her auditory hallucinations.  Acknowledging that her symptoms were in remission around the time of trial, the court noted its concern that the divorce becoming final could cause additional stress.  It also weighed Father's testimony that the Children were fearful and confused when Mother asked if they heard the voices she heard.  The court stated that it would reevaluate the parenting-time arrangement if Mother complied with treatment and demonstrated sustained mental stability.

*Child Support*

¶12          Under the Arizona Child Support Guidelines, the court calculated Mother's child-support obligation at $668 per month.  However, the court found this amount "inappropriate or unjust," due to her unemployment and the need for time to adjust after the divorce and seek work.  The court ultimately ordered Mother to pay $300 a month for child support, including back payments dating to when the petition was filed.

*Spousal Maintenance and Bobrow Reimbursement*

¶13          The court ordered Father to pay Mother $2,000 a month in spousal maintenance for 24 months.  It found Mother was entitled to maintenance due to her current unemployment and her past willingness to adjust her work schedule to support Father's career and travel.

¶14          The court reviewed the statutory factors for determining the amount and duration of spousal maintenance and attributed $111,740 as Father's income for 2023.  In its discussion, the court stated:

> Father claims he earns approximately $4,666.00 per month as an Account Executive.  He testified during the parties' marriage he was a 1099 employee and earned significantly more money.  However, as of January 2022, his employer changed the pay structure.  All employees were terminated as 1099 employees and are now W2 employees earning a guaranteed base pay of $52,000 per year. (Exhibit 12).  However, Father also earns commission and receives

4

other compensation from his employer. He testified while he is eligible for commission, commissions are based on performance and if you don't beat the sales from prior years, you don't get paid a commission. He states he earns 35% less than years prior. Father's social security statement reflects Father earned $96,013 in 2021 and $88,251 in 2020. (Exhibit 13). Correspondence from Father's employer reflects that as of August 9, 2023, Father *was on track to make* $111,740 in 2023. This amount is in line with Fathers reported six figure income in 2019 through 2021 as reported in his AFI and the Court will use this amount for purposes of spousal maintenance. (Emphasis added).

¶15 Notably, the correspondence from Father's employer ("Employer Correspondence") referenced by the court described Father's "year to date" income as of August 9, 2023, from various income sources including "Salary," "Car Allowance," and "Commission."

¶16 Additionally, the court granted Father a *Bobrow* reimbursement for post-petition community expenses he paid using separate funds. However, it denied Mother's request for retroactive spousal maintenance citing her minimal living expenses during the litigation. Later, in its division of community property, the court found no exceptional circumstances warranting deviation from equal distribution and reiterated its order that Mother reimburse Father for half of the amount he paid towards their community debt during the litigation.

*Division of Financial Accounts*

¶17 At trial, the parties agreed to divide their three bank accounts equally, having stipulated to their values. The court also found that Mother was entitled to half of the value of "any assets, including cryptocurrency accounts or proceeds therefrom that were not discovered or disclosed prior to trial." The court found equal distribution appropriate, noting in its A.R.S. § 25-319(B) analysis that there was "no credible evidence" of excessive spending, destruction, concealment, or fraudulent disposition of community property.

¶18 Mother appealed, and we have jurisdiction under A.R.S. § 12-2102(A)(2).

**DISCUSSION**

¶19　　　　On appeal, Mother raises six issues: (1) modification of parenting time, (2) calculation of Father's income, (3) *Bobrow* reimbursements awarded to Father and denial of retroactive spousal-maintenance payments, (4) division of community bank accounts, (5) failure to address her waste claim regarding Father's investment accounts, and (6) attorney fees.

## I.　　Standard of Review.

¶20　　　　We review the family court's rulings for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018) (parenting time); *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App. 2016) (child support); *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9 (App. 2007) (spousal maintenance); *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007) (division of community property). An abuse of discretion occurs "when the record is 'devoid of competent evidence to support the decision,' or when the court commits an error of law in the process of reaching a discretionary conclusion." *Engstrom*, 243 Ariz. at 471, ¶ 4 (quoting *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009)).

¶21　　　　On appeal, we do not reweigh the evidence, *see Gutierrez v. Fox*, 242 Ariz. 259, 272, ¶ 49 (App. 2017), and "must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to upholding the decree." *Spector v. Spector*, 94 Ariz. 175, 179 (1963). We defer to the court's determination of witnesses' credibility and the weight given to conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). We will affirm a judgment if it is supported by reasonable evidence. *Boyle v. Boyle*, 231 Ariz. 63, 65, ¶ 8 (App. 2012).

## II.　　Parenting Time.

¶22　　　　Mother argues that the court was required to find a change in circumstances to modify the parenting-time arrangement in the Agreement. *See Engstrom*, 243 Ariz. at 472, ¶ 10 (stating that once a Rule 69 agreement is adopted, the court must find a change in circumstances to modify it). Alternatively, Father asserts the court was not required to find a change in circumstances before modifying parenting time because the matter involved temporary orders governed by a different statute. We need not resolve this dispute because reasonable evidence supports the court's finding of changed circumstances.

**¶23** The court has "broad discretion to decide whether a change in circumstances has occurred." *Pridgeon v. Superior Ct.*, 134 Ariz. 177, 179 (1982). If the court finds changed circumstances, it then considers whether a modification is in the child's best interests by applying the factors in A.R.S. § 25-403(A). *See Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (stating that once the court makes a finding of changed circumstances, it then determines whether a change in custody is in the best interests of the child).

**¶24** Mother had experienced auditory hallucinations at the time the parties entered the Agreement, and her psychological evaluation indicated that her disorder was in remission around the time of trial. But reasonable evidence supports the court's finding that between the Agreement and trial, the hallucinations had become more severe and expanded to involve the Children and others. Because competent evidence supports the court's conclusion that Mother's condition had changed in a way that materially impacted the Children's welfare, the superior court did not abuse its discretion in finding a change of circumstances. *See Engstrom*, 243 Ariz. at 471, ¶ 4 (stating that "an abuse of discretion results when the record is 'devoid of competent evidence to support the decision'" (quoting *Hurd*, 223 Ariz. at 52, ¶ 19)).

**¶25** Following its change-in-circumstances finding, the court assessed whether modifying parenting time served the Children's best interests using the factors in A.R.S. § 25-403(A). The court weighed both Mother's and the psychologist's testimony that stress exacerbated her hallucinations and the psychologist's evaluation indicating her disorder was in remission. Mother also testified that the events related to the dissolution caused her stress.

**¶26** In this context, the court did not abuse its discretion in drawing the inference that the stress of finalizing a divorce could cause Mother's condition to worsen, affecting the Children's welfare. *See Spector*, 94 Ariz. at 179 (stating this Court should draw "all reasonable inferences" from the evidence in support of upholding the decree). Accordingly, we defer to the court's determination that the modification was in the Children's best interests.

III. **Father's Income Calculation and Related Awards of Child Support, Back Child Support, and Spousal Maintenance.**

¶27 Mother argues that the court erred in calculating Father's income by (1) misreading the Employer Correspondence, and (2) failing to consider Father's investments.

A. **Employer Correspondence.**

¶28 Mother asserts that the court erroneously interpreted the figures in the Employer Correspondence as Father's projected annual earnings, rather than as his year-to-date earnings as of August of 2023. She argues that no evidence was presented to support the court's attribution of an annual income of $111,740 to Father. Instead, she argues that he was "on pace to earn over $190,000 for 2023." Based on this alleged error, Mother seeks to vacate the court's rulings regarding child support, spousal maintenance, and denial of back payments.

¶29 We are not convinced. At trial, Mother and Father presented conflicting evidence of what should have been attributed as Father's income. And the Decree reflects the court's consideration of all the evidence presented. At trial, Mother argued that the court should attribute $185,396 as Father's 2023 income, based on the Employer Correspondence showing he had earned $111,745 by August 2023. Assuming he kept that pace, she asserted that he was "on track to have a gross income of $185,396 and change" by the end of the year.

¶30 Mother argued the court should rely only on the Employer Correspondence because Father's documented social security income was unreliable. She argued the discrepancies between his 2021 social security income ($96,013) and his tax return income for the year ($102,427), suggested an understatement. She also pointed to a home equity loan application where Father listed his monthly income as $11,666, reflecting his anticipated earnings after transitioning to employee status. Additionally, she testified that Father had failed to disclose any financial documentation for 2022 or 2023 despite discovery requests and speculated that his income during those years was significantly higher than in previous years.

¶31 Alternatively, Father asked the court to use his tax returns and social security earnings to determine his 2023 income. As exhibits to

his affidavit of financial information ("AFI"), Father submitted tax returns showing incomes of $108,192 for 2019, $78,778 for 2020, and $102,427 for 2021. His social security earnings for those years, also attached as an exhibit, showed incomes of $118,376 for 2019, $88,251 for 2020, and $96,013 for 2021. He asserted that his tax returns provided a more accurate tool for estimating his income because the Employer Correspondence merely summarized paycheck withholdings and would likely overstate his actual earnings.

¶32        Father also testified that his income consisted of a $52,000 base salary plus variable commissions tied to sales performance. He explained that his compensation had recently shifted from 1099 contractor to W-2 employee, and that commissions fluctuated significantly year to year—testifying that he had earned 35% less in January of 2024 than in January of 2023. He noted that he would be penalized if he failed to exceed prior benchmarks, making his income unpredictable. Father also stated in his AFI that his gross monthly salary was $4,166. He explained that this amount excluded commissions and bonuses because, due to his recent transition to employee status, he "had no idea what income was going to look like." Accordingly, as his income was prone to fluctuation, he asked the court to rely on his prior years' tax returns and social security earnings when determining his income.

¶33        On appeal, we review the record in the light most favorable to affirming the court's order. *Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 9 (App. 2007). In this light, we presume that the court relied on all record evidence "even if it is not specifically detailed in the minute entry." *Id.* at ¶ 11. It is not our duty to reweigh conflicting evidence, and we defer to the court's judgment of the credibility of witnesses. *Hurd*, 223 Ariz. at 52, ¶ 16; *see also Hoobler v. Hoobler*, 254 Ariz. 130, 141, ¶ 26 (App. 2022) ("we have a duty 'to affirm where any reasonable view of the fact and law might support the judgement of the [family] court'") (quoting *BNCCORP, Inc. v. HUB Int'l Ltd.*, 243 Ariz. 1, 9, ¶ 35 (App. 2017) (alteration in original)).

¶34        Here, the parties presented conflicting evidence of Father's earnings, and, ultimately, the court weighed both positions presented at trial and attributed $111,740 as Father's yearly income, noting that this amount was "in line with Father's reported six figure incomes." While the Employer Correspondence may have informed the court's analysis, the Decree also identifies a range of additional factors on which the court relied in reaching its conclusion. These factors included the unpredictable nature of Father's compensation structure, variability of his commissions, and his prior years' tax returns and social security income.

¶35        Accordingly, because evidence reasonably supported the court's attribution of $111,740 for Father's 2023 income, Mother has not demonstrated an abuse of discretion.  *See Engstrom*, 243 Ariz. at 471, ¶ 4; *see also Boyle*, 231 Ariz. at 65, ¶ 8 (stating we "will affirm the judgment if reasonable evidence supports it").

### B.  Father's Investments.

¶36        Mother also argues that the court failed to consider Father's alleged gains from the Robinhood Account.  However, as discussed *infra* ¶ 47, despite extended time for additional discovery, Mother failed to present evidence of such gains and moved to vacate the second trial date during which the court was to address these issues.  Mother has not demonstrated that the court abused its discretion by dividing the account equally and failing to attribute investment income from it.  *See Thomas v. Thomas*, 142 Ariz. 386, 391 (App. 1984) (stating that maintenance awards "cannot be based upon mere hopes and speculative expectations").

## IV.    Award of *Bobrow* Reimbursement Claim and Denial of Back Payments of Spousal Maintenance.

¶37        The family court has broad discretion to determine equitable division of community property.  *Hoobler*, 254 Ariz. at 137, ¶ 13 (App. 2022).  When one party uses their separate property to pay towards community debt after a dissolution petition is filed, those post-petition payments "must be accounted for in an equitable property distribution."  *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017).

¶38        Neither party disputes whether Mother was entitled to spousal maintenance.  However, Mother argues that the court erred by not offsetting the *Bobrow* reimbursement against retroactive spousal maintenance accrued since the petition's filing.  We disagree.

¶39        The court may account for *Bobrow* reimbursement payments in a variety of ways to achieve an equitable division of property.  *See Hammett v. Hammett,* 247 Ariz. 556, 561, ¶ 26 (2019).  And whether to award retroactive spousal maintenance is discretionary.  *See Huey v. Huey*, 253 Ariz. 560, 565, ¶ 20 (App. 2022).

¶40        In its division of property and debts, the court found that because this case did not present "a unique set of facts or circumstances . . . an equal division of property [was] appropriate to achieve equity." Consequently, the court found that Father was entitled to reimbursement for half of the amount he paid towards their community debt during the litigation. It also found that Mother incurred minimal expenses during the litigation. Because the overall property distribution was equitable, Mother has not demonstrated any abuse of discretion in the court's denial of her request for retroactive spousal maintenance. *See Barron v. Barron*, 246 Ariz. 580, 591, ¶¶ 43–44 (App. 2019) (affirming the denial of Husband's reimbursement request "[b]ecause the overall property allocation was equitable"), *vacated in part (¶¶ 24–30) on other grounds*, 246 Ariz. 449 (2019).

## V.    Division of Community Bank Accounts.

¶41        Mother argues that the court erred in its division of community property based on the absence of bank records for one account and her counsel's understanding that financial accounts were to be addressed at the second trial date. But, when presented with a bank statement of the account at trial, Mother testified that the amount in the disputed account was $5,850 and requested an equal division. This is the amount the court used in dividing that account. Second, her attorney said he was prepared to address all financial accounts, except the Robinhood Account, on the first trial day. Mother later moved to vacate the second trial date after her counsel stated that she had no further evidence to present.

¶42        The court did not abuse its discretion in basing its division on Mother's uncontested testimony about the amount held in the account, nor accepting her counsel's willingness to proceed on the first trial date. *See Boyle*, 231 Ariz. at 65, ¶ 8 (stating we "will affirm a judgment if reasonable evidence supports it").

## VI.    Waste Claim.

¶43        Allocation of community property, including the determination of the existence of waste, is reviewed for abuse of discretion. *Gutierrez*, 193 Ariz. at 346, ¶ 5. We view the evidence in the light most favorable to sustaining the court's findings and determine whether the evidence reasonably supports those findings. *Id.*

11

¶44　　　　When allocating community property, "the court may consider 'excessive or abnormal expenditures, . . . concealment or fraudulent disposition' of community property." *Goodell v. Goodell*, 257 Ariz. 563, 571, ¶ 35 (App. 2024) (quoting A.R.S. § 25-318(C)). If one party demonstrates waste of community property, the court may award the innocent party a greater share of community property to offset the loss. *Id.* The alleging party must first make a prima facie showing that the other's use of community property was excessive, abnormal, or concealed. *Gutierrez*, 193 Ariz. at 346, ¶ 7. The burden then shifts to the spending spouse to rebut the allegation. *Id.* at 346–47, ¶ 7. When evidence is conflicting, we defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence. *Id.* at 347–48, ¶ 13.

¶45　　　　If requested by a party, the court must find the facts specially and state its conclusions of law. Ariz. R. Fam. Law P. 82(a)(1). Absent such a request, we presume the court found every fact necessary to support its decision. *Whitt v. Meza*, 257 Ariz. 176, 180, ¶ 8 (App. 2024).

¶46　　　　Mother did not request specific factual findings or conclusions of law regarding her waste claim. Nonetheless, reasonable evidence supports the court's conclusion that she failed to make a prima facie showing of waste.

¶47　　　　The court found no credible evidence of abnormal expenditures or the concealment of community property. Mother's waste claim centered on allegations that Father deposited community funds into undisclosed investment accounts, totaling up to $5 million. Since September of 2022, Mother investigated this allegation and sought multiple continuances, leading the court to bifurcate the trial for further discovery of Father's investment activity. After the court denied her final continuance request, Mother vacated the second trial date, citing a lack of new evidence. The court then ordered an equal division of any undiscovered or undisclosed assets, including, but not limited to, Father's cryptocurrency accounts.

¶48　　　　The court had discretion to evaluate conflicting evidence, and the record reasonably supports its conclusion that Mother presented no credible proof of excessive or abnormal expenditures, despite multiple discovery extensions. Thus, Mother failed to meet the prima facie showing required to maintain a waste claim.

**VII.**     **Attorney Fees.**

**¶49**        Mother and Father both request attorney fees and costs on appeal under A.R.S. § 25-324(A). In our discretion, we decline to award either party attorney fees. Because Father is the successful party on appeal, he is entitled to recover costs upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

## CONCLUSION

**¶50**        For the foregoing reasons, we affirm.

